Opinion filed April 26, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed April 26, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00198-CV 

                                                    __________

 

                               IN THE INTEREST OF S.J.F., A CHILD

 



 

                                              On
Appeal from the 35th District Court

 

                                                            Brown County, Texas

 

                                                   Trial
Court Cause No. 02-10-599

 



 

                                             M
E M O R A N D U M   O P I N I O N

 








This an accelerated appeal from the trial court=s termination of parental rights.  We affirm. 
        

S.J.F. was born on June 2, 2005, while both her
mother Betty Skaggs and her father George Ford (appellant) were incarcerated.  On June 13, 2005, the Texas Department of
Health and Family Services was named temporary managing conservator of
S.J.F.  S.J.F. was placed by the
Department in a foster home with two of her siblings.  The Department had been involved with the mother
and each of her four children for several years.  Betty had an extensive drug abuse
history.  As a result of not being able
to care for her children, she relinquished her rights to S.J.F. and to two of
S.J.F.=s older
siblings in January 2006.  At the trial
on the merits that involved those two older siblings, the trial court found by
clear and convincing evidence that appellant had violated Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O) (Vernon Supp.
2006) and that it was in the best interest of the two children that appellant=s parental rights be terminated. 

Before Betty relinquished her rights to S.J.F., an
adversary hearing was held on June 13, 2005, in regard to S.J.F.; appellant did
not attend because he was incarcerated. 
At that hearing, the trial court entered a temporary order granting
appellant and Betty temporary possessory conservatorship and requiring, among
other things, that S.J.F. would have supervised visitation with her parents and
that both Betty and appellant attend parenting classes, submit to drug testing,
and comply with a service plan.  On
September 26, 2005, a services review hearing was held.  Appellant was not served with notice of the
hearing.  At the hearing, the trial court
made a finding that the Department had exercised due diligence to locate
appellant.  The trial court also found
that appellant had not demonstrated adequate and appropriate compliance with
the service plan.  Appellant was served on
November 14, 2005.

Appellant attended a permanency review hearing on
March 20, 2006, during which the final hearing was set for May 15, 2006.  At the hearing on May 15, the trial court
took judicial notice of the testimony at the previous hearing on January 4-5,
2006.  After the hearing, the court
entered an order terminating appellant=s
parental rights to S.J.F.  The final
order of termination incorporated the relinquishment of Betty=s rights. Pursuant to Section
161.001(1)(D), (E), (O), the trial court found by clear and convincing evidence
that appellant:

[1] knowingly placed or knowingly allowed the
child to remain in conditions or surroundings which endanger the physical or
emotional well-being of the child; 

 

[2] engaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child; and, 

 

[3] failed to comply with the provisions of a
court order that specifically established the actions necessary for the father
to obtain the return of the child who has been in the permanent or temporary
managing conservatorship of the Department of Family and Protective Services
for not less than nine months as a result of the child=s
removal from the parent under Chapter 262 for the abuse or neglect of the
child.

 








The trial court also found by clear and convincing
evidence that the termination of appellant=s
parental rights was in S.J.F.=s
best interest.  Tex. Fam. Code Ann. §161.001(2) (Vernon Supp. 2006).  In four issues, appellant argues that the
evidence was legally and factually insufficient to support each of the three
grounds for termination and to support the finding that termination was in the
best interest of S.J.F.

Texas
courts have long recognized that the natural right existing between a parent
and a child is of Aconstitutional
dimensions.@ Wiley
v. Spratlan, 543 S.W.2d 349, 352 (Tex.
1976). There is a strong presumption that the best interest of a child is
served by keeping the child with the natural parent.  In re G.M., 596 S.W.2d 846 (Tex. 1980). Thus,
involuntary termination statutes are strictly scrutinized in favor of the
parent. Holick v. Smith, 685 S.W.2d 18, 20-21 (Tex. 1985).

Due process requires that the grounds for
termination be established by clear and convincing evidence. In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002) (citing Santosky
v. Kramer, 455 U.S.
745, 769 (1982)); In re J.P.H., 196 S.W.3d 289, 292 (Tex. App.-Eastland
2006, no pet.). This requires a measure or degree of proof that will produce in
the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. Tex.
Fam. Code Ann. '
101.007 (Vernon 2002); In re J.P.H., 196 S.W.3d at 292. 

When conducting a legal sufficiency review, we
review the entire record in the light most favorable to the finding and
determine whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true. City of Keller
v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005); In re
J.F.C., 96 S.W.3d at 266; In re J.P.H., 196 S.W.3d at 292.  We must assume that the fact-finder resolved
disputed facts in favor of its finding. Phillips v. Tex.
Dep=t of
Protective & Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.- Eastland 2004, no pet.). We must
also disregard all evidence that a reasonable fact-finder could have
disbelieved or found incredible, but we cannot disregard undisputed facts. In
re J.F.C., 96 S.W.3d at 266.








When conducting a factual sufficiency review, we
review the entire record, including evidence in support of and contrary to the
judgment, and give due consideration to evidence the trial court could have
found to be clear and convincing.  In
re C.H., 89 S.W.3d 17, 25 (Tex.
2002); In re J.P.H., 196 S.W.3d at 292. 
We then determine whether the evidence is such that a fact-finder could
reasonably form a firm belief or conviction about the truth of the State=s allegations. In re C.H., 89
S.W.3d at 25.

To terminate parental rights, the proponent must
prove by clear and convincing evidence that a parent committed one or more of
the acts or omissions set forth in Section 161.001(1) and that termination of
parental rights is in the child=s
best interest. In re J.L., 163 S.W.3d 79, 84  (Tex. 2005);
In re B.L.D., 113 S.W.3d 340, 353-54 (Tex.
2003); Richardson v. Green, 677
S.W.2d 497, 499 (Tex.
1984). 

We first review the evidence supporting the trial
court=s
findings that appellant had knowingly placed or knowingly allowed the child to
remain in conditions or surroundings that endangered the physical or emotional
well-being of the child and that he engaged in conduct or knowingly placed the
child with persons who engaged in conduct that endangered the child=s physical or emotional well-being.  See Section 161.001(1)(D), (E). 

Both Subsections (D) and (E) require proof of
endangerment, which means to expose to loss or injury or to jeopardize a child=s emotional or physical health.  Tex.
Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987); Doyle v. Tex. Dep=t of Protective & Regulatory Servs.,
16 S.W.3d 390, 394 (Tex.
App.CEl Paso
2000, pet. denied).  While endangerment
means more than a threat of metaphysical injury or the possible ill effects of
a less-than-ideal family environment, it is not necessary that the conduct be
directed at the child or that the child actually suffer injury.  Doyle, 16 S.W.3d at 394.  Subsections (D) and (E) differ in one
respect:  the source of the physical or
emotional endangerment to the child.  See
In re B.S.T., 977 S.W.2d 481, 484 (Tex. App.CHouston
[14th Dist.] 1998, no pet.); In re S.H.A., 728 S.W.2d 73, 83-84 (Tex.
App.CDallas
1987, writ ref=d
n.r.e.). Subsection (D) requires a showing that the environment in which the
child is placed endangered the child=s
physical or emotional health.  Doyle,
16 S.W.3d at 394.  This provision
addresses the child=s
surroundings and environment rather than parental misconduct, which is the
subject of Subsection (E).  Doyle,
16 S.W.3d at 394; In re B.S.T., 977 S.W.2d at 484; In re S.H.A.,
728 S.W.2d at 84. Under Subsection (E), the cause of the danger to the child
must be the parent=s conduct
alone, as evidenced not only by the parent=s
actions but also by the parent=s
omission or failure to act.  Doyle,
16 S.W.3d at 395; In re B.S.T., 977 S.W.2d at 484; In re S.H.A.,
728 S.W.2d at 83-84.








Conduct of a parent or another person in the home
can create an environment that endangers the physical and emotional well-being
of a child required for termination under Subsection (D). In re W.S.,
899 S.W.2d 772, 776 (Tex. App.CFort
Worth 1995, no writ); D.O. v. Tex.
Dep=t of
Human Servs., 851 S.W.2d 351, 354-55 (Tex. App.CAustin
1993, no writ); In re B.R., 822 S.W.2d 103, 105-06 (Tex. App.CTyler 1991, writ denied).  For example, an environment that routinely
subjects a child to the probability that he will be left alone because his
parents or caregivers are incarcerated endangers both the physical and
emotional well-being of a child.  See
In re S.D., 980 S.W.2d 758, 763 (Tex. App.CSan
Antonio 1998, pet. denied) (parents repeatedly jailed due to illegal drug use
and drug-related criminal activity).

Under Subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s physical and emotional well-being was
the result of the parent=s
conduct, including acts and omissions. In re R.D., 955 S.W.2d 364, 368
(Tex. App.CSan
Antonio 1997, pet. denied); Dupree v. Tex.
Dep=t of
Protective & Regulatory Servs., 907 S.W.2d 81, 83-84 (Tex. App.CDallas 1995, no writ).  The conduct to be examined includes what the
parents did both before and after the child was born.  In re D.M., 58 S.W.3d 801, 812 (Tex. App.CFort Worth 2001, no pet.); Dupree,
907 S.W.2d at 84. To be relevant, the conduct does not have to have been
directed at the child nor must actual harm result to the child from the
conduct.  Dupree, 907 S.W.2d at
84; In re C.D., 664 S.W.2d 851, 853 (Tex. App.CFort
Worth 1984, no writ).  Additionally,
termination under Subsection (E) must be based on more than a single act or
omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  Section
161.001(1)(E); In re K.M.M., 993 S.W.2d 225, 228 (Tex. App.CEastland 1999, no pet.). The specific
danger to the child=s
well-being need not be established as an independent proposition but may be
inferred from parental misconduct.  In
re N.K., 99 S.W.3d 295, 300 (Tex.
App.CTexarkana
2003, no pet.).








Drug addiction and its effects on a parent=s life and ability to parent may
establish an endangering course of conduct as well. Dupree, 907 S.W.2d
at 84. While a parent=s
incarceration, standing alone, will not prove endangerment under Subsection
(E), it is a factor for consideration by the trial court on the issue of
endangerment.  Boyd, 727 S.W.2d at
533-34;  In re M.D.S., 1 S.W.3d
190, 199 (Tex. App.CAmarillo
1999, no pet.).  If the evidence,
including the imprisonment, shows a course of conduct that has the effect of
endangering the physical or emotional well-being of the child, a finding under
Subsection (E) is supportable.  Boyd,
727 S.W.2d at 534 (citing to prior version of the statute); In re M.D.S.,
1 S.W.3d at 199.

We will review the evidence pertaining to
Subsections (D) and (E) together. 
Jacqueline Cordry, a CASA volunteer involved in the case, testified
that, in her opinion, appellant=s
rights were terminated as to the two older twin siblings because appellant had
testified at an earlier hearing that he observed Betty use crack cocaine and
other drugs in her house and then he left the house and children. There is no
indication in the record that he called his caseworker or did anything to
protect the children in the house. 
Appellant visited his children on Sundays, and during those visits,
crack dealers came to the house.  There
is no indication in the record that appellant ever contacted his caseworker
regarding Betty=s drug
use in the house.  Cordry further
testified that it would be in the best interest of S.J.F. that appellant=s parental rights to her be
terminated.  Stephanie Hartman, a
caseworker for the Department, testified that Betty and appellant were using
drugs together while Betty was in her first months of pregnancy with S.J.F.

The Department became involved with appellant=s eldest of four children in March 2000
because of allegations of neglectful supervision and physical neglect.  The next oldest children of appellant were
twins.  The Department completed the
investigation and ruled out the allegations as to the eldest child before the
twins were born.  After the twins were
born in July 2002, the Department temporarily placed the twins in a home and
required that Betty be supervised with the children.  The Department subsequently removed the twins
from Betty some months later due to a later validated belief that she was using
drugs during the pregnancy.  At the time
of the twins= removal,
appellant was incarcerated, and a safety plan was put in place that required
that the mother not be alone with the twins.








Appellant had a long history of incarceration and
noncompliance with the Department=s
service plan.  At the time of the hearing
on the termination of appellant=s
parental rights to S.J.F., he was incarcerated and refused to go to the
hearing.  He was also absent from the
hearing regarding the termination of his rights to the twins.  Even though appellant knew that his children
were in an environment where illegal criminal activity was taking place, he did
nothing to place his children in a safe environment.  He was incarcerated again after S.J.F. was
born.  Between the time she was born and
the time of the May 2006 termination hearing, appellant visited S.J.F. once
when she was one month old.

We overrule appellant=s
first two appellate issues.  Because we
have concluded that there was both legally and factually sufficient evidence to
support the trial court=s
findings under Section 161.001(1)(D), (E), we need not address appellant=s third issue regarding sufficiency of
the evidence to support the trial court=s
findings under Section 161.001(1)(O). 
Only one finding alleged under Section 161.001(1)(D), (E), (O) is
necessary for a judgment of termination. In re D.M., 58 S.W.3d 801; In
re S.F., 32 S.W.3d 318, 320 (Tex.
App.CSan
Antonio 2000, no pet.); see also Tex.
R. App. P. 47.1.

Appellant argues in his fourth issue that the
evidence was legally and factually insufficient to support the trial court=s finding that termination of his
parental rights was in S.J.F.=s
best interest.  In deciding whether the
evidence is sufficient to support a trial court=s
finding that termination is in the child=s
best interest, we are guided by the nonexclusive list of factors set forth in Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  Those factors include:  (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by the agency seeking custody; (7) the
stability of the home or proposed placement; (8) the acts or omissions of the
parent that may indicate that the existing parent-child relationship is not a
proper one; and (9) any excuse for the acts or omissions of the parent.  Id.;
In re C.A.J., 122 S.W.3d 888, 892-93 (Tex. App.CFort
Worth 2003, no pet).  These factors are
not exhaustive, nor must all of the factors be proved as a condition precedent
to parental termination. See In re C.H., 89 S.W.3d at 27; Vasquez v. Tex. Dep=t of Protective & Regulatory Servs.,
190 S.W.3d 189, 196 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied). The absence of evidence of some of these
considerations would not preclude a fact-finder from reasonably forming a
strong conviction or belief that termination was in the child=s best interest, particularly if the
evidence was undisputed that the parental relationship endangered the safety of
the child.  See In re C.H., 89
S.W.3d at 27.








Appellant knew about and chose not to attend the
hearings concerning S.J.F. and her two older siblings. He had a history of
incarceration, and he failed to provide a safe environment for S.J.F. knowing
that drug use and drug dealing were occurring in S.J.F.=s
home environment.  His caseworker
testified that, in her opinion, it was in S.J.F.=s
best interest that the parent-child relationship be terminated.  There was no indication at any hearing that
appellant made efforts during the four years the Department was involved with
his children to remain out of prison, to attain employment, and to provide a
safe home environment for his children. 

We have reviewed the entire record including
evidence in support of and contrary to the judgment and have given due
consideration to evidence the trial court could have found to be clear and
convincing.  In re C.H., 89 S.W.3d
at 25; In re J.P.H., 196 S.W.3d at 292. 
We conclude that a reasonable trier of fact could have formed a firm
belief or conviction that termination of the parent-child relationship between
appellant and S.J.F. was in S.J.F.=s
best interest. The fourth issue is overruled. 


The judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

April 26, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.